UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

KERON MOREIRA,

                                  Plaintiff,

                  -against-

THE CITY OF NEW YORK; CAPTAIN BLAKE
Individually and in his Official Capacity; CORRECTION
OFFICER REED #Shield 1373 Individually and in her
Official Capacity; CORRECTION OFFICER JOHN
DOE Individually and in his Official Capacity; Warden of
Anna M. Kross Center, ROBERT CRIPPS, Individually
and in his Official Capacity; and, Warden of
Anna M. Kross Center Individually and in his Official
Capacity,

                                 Defendants.

--------------------------------------------------------------------X

Docket
1:16-cv-04203(LAK)(HBP)

**COMPLAINT**
**JURY TRIAL DEMANDED**

## NATURE OF THE ACTION

1.    This civil action arises from a gang assault/slashing and beating which the plaintiff received from inmates while a detainee at Anna M. Kross Center ("AMKC") a jail facility located on Rikers Island, on October 7, 2014.

2.    Plaintiff seeks compensatory and punitive damages for violation of plaintiff's civil rights pursuant to 42 U.S.C. Sections 1983 and an award of costs, disbursements and attorney fees under 42 U.S.C. Sec. 1988 and compensatory damages under State law tort claims.

## JURISDICTION and VENUE

3.     This action is predicated upon violations of plaintiff's civil rights protected under the United States Constitution inclusive of the Eighth and Fourteenth Amendments to the United States Constitution and actionable pursuant to 42 U.S.C. Sections 1983 and negligence principles of New York State law.

4.     The venue is proper, as the operative events occurred within the County of Bronx.

5.     That on or about October 10, 2014 and within 90 days of the occurrence herein plaintiff KERON MOREIRA caused a Notice of Claim to be served upon defendant CITY OF NEW YORK.

6.     That on July 2, 2015, plaintiff presented before the defendant, CITY OF NEW YORK, and gave testimony pursuant to General Municipal Law 50-h about the acts and occurrence which gave rise to this action.

## PARTIES

7.     Plaintiff KERON MOREIRA is currently a resident of the State of New York and the County of Washington; at the time of the events which Plaintiff complains, he was an inmate incarcerated at Anna M. Kross Center ("AMKC") a jail at Rikers Island, located at 18-18 Hazen Street, East Elmhurst, New York.

8.     Defendant, the CITY OF NEW YORK is a municipal corporation duly authorized and existing under and by virtue of the laws of the State of New York.

9.     Defendant, the CITY OF NEW YORK, has established and maintains a Department of Corrections which is an agency of the defendant, CITY OF NEW YORK.

10.     At all times relevant, defendant THE CITY OF NEW YORK employed the individual defendant CAPTAIN BLAKE.

11.     At all times relevant, defendant THE CITY OF NEW YORK employed the individual defendant CORRECTION OFFICER REED, Badge #1373.

12.     At all times relevant, defendant THE CITY OF NEW YORK employed the individual defendant CORRECTION OFFICER JOHN DOE.

13.     At all times relevant, defendant CITY OF NEW YORK employed CAPTAIN BLAKE; CORRECTION OFFICER REED, Badge #1373 and, CORRECTION OFFICER JOHN DOE  out of Anna M Kross Center ("AMKC) one of the jails on Rikers Island Correctional Facility.

14.     At all times relevant, CAPTAIN BLAKE was a duly appointed and acting correction officer of THE CITY OF NEW YORK.

15.     At all times relevant, CORRECTION OFFICER REED, Badge #1373 was a duly appointed and acting correction officer of THE CITY OF NEW YORK.

16.     At all times relevant, CORRECTION OFFICER JOHN DOEs were duly appointed and acting correction officers of THE CITY OF NEW YORK.

17.     At all times relevant, defendant CAPTAIN BLAKE was acting under the color of State Law.

18.     At all times relevant, defendant CORRECTION OFFICER REED, Badge #1373 was acting under the color of State Law.

19.     At all times relevant, defendant CORRECTION OFFICER JOHN DOEs were acting under the color of State Law.

20.     At all times relevant, defendant CAPTAIN BLAKE was acting both in his

individual and official capacity as an employee of defendant CITY OF NEW YORK.

As a uniformed Correction Officer, this defendant is supposed to protect inmates

including the plaintiff herein KERON MOREIRA. Correction officers are required to

carry out their responsibilities in a manner consistent with the legal mandates that

govern the operation of the DOC and its jails, including the written DOC directives

and orders.  Defendant CAPTAIN BLAKE is sued in his individual and official

capacity.

21.     At all times relevant, defendant CORRECTION OFFICER REED, Badge #1373

was acting both in her individual and official capacity as an employee of defendant

CITY OF NEW YORK. As a uniformed Correction Officer, this defendant is

supposed to protect inmates including the plaintiff herein KERON MOREIRA.

Correction officers are required to carry out their responsibilities in a manner

consistent with the legal mandates that govern the operation of the DOC and its jails,

including the written DOC directives and orders.  Defendant CORRECTION

OFFICER REED, Badge #1373 is sued in her individual and official capacity.

22.     At all times relevant, defendants CORRECTION OFFICER JOHN DOEs were

acting both in their individual and official capacities as employees of defendant CITY

OF NEW YORK. As uniformed correction officers, these defendants are supposed to

protect inmates including the plaintiff herein KERON MOREIRA. Correction officers

are required to carry out their responsibilities in a manner consistent with the legal

mandates that govern the operation of the DOC and its jails, including the written

4

DOC directives and orders. Defendants CORRECTION OFFICER JOHN DOEs are sued in their individual and official capacities.

23.     Defendant ROBERT CRIPPS was the Warden at AMKC, a Department jail. As Warden, Defendant ROBERT CRIPPS was and is responsible for supervision of correction officers, captains, and other supervisors with respect to the care, custody, and control of inmates confined in the jail. These responsibilities were and are required to be carried out in a manner consistent with the legal mandates that govern the operation of DOC and its jails, including the written Department directives and orders. As Warden, Defendant ROBERT CRIPPS was and is provided on a daily basis with all reports of violent incidents in his jail. He was and is responsible for reviewing and approving these reports before forwarding them to the Integrity and Policy Division of the Department, as well as conducting investigations in his facility and recommending discipline for misconduct. At all times referred to in this Complaint; Defendant Cripps was and is acting within the scope of his employment as an employee of the Department and acting under color of state law. Defendant ROBERT CRIPPS is sued in his Official and in his Individual capacity.

24.     Defendant Warden of Anna M. Kross Center, a Department jail, was and is, responsible for supervision of correction officers, captains, and other supervisors with respect to the care, custody, and control of inmates confined in the jail. These responsibilities were and are required to be carried out in a manner consistent with the legal mandates that govern the operation of DOC and its jails, including the written Department directives and orders. The Warden is provided on a daily basis with all reports of violent incidents in his jail. He was and is responsible for reviewing and

approving these reports before forwarding them to the Integrity and Policy Division of the Department, as well as conducting investigations in his facility and recommending discipline for misconduct. At all times referred to in this Complaint; Defendant Warden of Anna M. Kross Center was and is acting within the scope of his employment as an employee of the Department and acting under color of state law. Defendant Warden of Anna M. Kross Center is sued in his Official and in his Individual capacity.

## FIRST CAUSE OF ACTION

25.     On or about the 7th day of October 2014, defendant, CITY OF NEW YORK, was the owner of the premises known as Anna M Kross Center ("AMKC"), a jail located at Rikers Island Correctional Facility, East Elmhurst, NY.

26.     On or about the 7th day of October 2014, defendant, CITY OF NEW YORK, by its agents, servants and/or employees, operated the aforesaid premises.

27.     On or about the 7th day of October 2014, defendant, CITY OF NEW YORK, by its agents, servants and/or employees, managed the aforesaid premises.

28.     On or about the 7th day of October 2014, defendant, CITY OF NEW YORK, by its agents, servants and/or employees, controlled the aforesaid premises.

29.     On or about the 7th day of October 2014, defendant, CITY OF NEW YORK, by its agents, servants and/or employees, maintained the aforesaid premises.

30.     On or about the 7th day of October 2014, defendant, CITY OF NEW YORK, by its agents, servants and/or employees, repaired the aforesaid premises.

31.     On or about the 7th day of October 2014 the defendant, CITY OF NEW YORK, by its agents, servants and/or employees, inspected the aforesaid premises.

32.     On or about the 7th day of October 2014, defendant, CITY OF NEW YORK, by its agents, servants and/or employees, leased the aforesaid premises.

33.     On or about the 7th day of October 2014, defendant, CITY OF NEW YORK, by its agents, servants and/or employees, supervised the aforesaid premises.

34.     At the aforesaid date and time, the plaintiff KERON MOREIRA, was at the aforesaid premises.

35.     At the aforesaid date and time, the plaintiff KERON MOREIRA, was lawfully at the aforesaid premises.

36.     At the aforesaid date and time, the defendant THE CITY OF NEW YORK, knew that the plaintiff was housed with persons who posed a risk of harm to the plaintiff KERON MOREIRA.

37.     At the aforesaid date and time, the defendant THE CITY OF NEW YORK, had actual notice of the risk of harm and more specifically, the plaintiff's risk of being violently assaulted by inmates with whom he had been housed.

38.     At the aforesaid date and time, the defendant THE CITY OF NEW YORK, had constructive notice of the risk of harm and more specifically, the plaintiff's risk of being violently assaulted by inmates with whom he had been housed.

39.     At the aforesaid date and time, the plaintiff KERON MOREIRA was caused to to be assaulted on the premises.

40.     At the aforesaid date and time, the plaintiff KERON MOREIRA was caused to be violently assaulted and battered on the premises.

41.     Plaintiff, KERON MOREIRA was injured.

42.     Plaintiff, KERON MOREIRA was seriously injured.

43.     The aforesaid occurrence and resulting injuries to the plaintiff were due solely

to the carelessness, recklessness and negligence of the defendant(s) in the ownership,

operation, management, inspection, maintenance, supervision, repair and control of

the above mentioned premises.

## FACTUAL AVERMENTS REGARDING CLAIMS UNDER 42 U.S.C. SECTION 1983

### A. General Allegations re Policy and Practice.

44.     Defendant, with deliberate indifference, gross negligence, and reckless

disregard to the safety, security, and constitutional and statutory rights of plaintiff and

all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced

in, and applied policies or practices of, among other things,

a.     Subjecting persons in their jails to violence perpetrated by other inmates

when with proper care the violence would not occur.

b.     Selecting, retaining and assigning Correction Officers to their jails who

exhibit deliberate indifference and reckless disregard for the safety, security and

constitutional and statutory rights of detainees, arrestees and inmates;

c.     Failing to take adequate security measures to protect detainees, arrestees

and inmates from unnecessary harm, including but not limited to, the following:

Separation of detainees and arrestees from potentially violent or dangerous inmates;

use of security cameras to monitor violence within jail cells, training Correction

Officers to monitor detainees and inmates and immediately respond to acts of

violence or threats of violence and, recognizing potentially volatile situations and

circumstances that are likely to erupt into violence.

  d.  Failing to adequately train, supervise, and control correction officers in the arts of law enforcement;

  e.  Failing to adequately discipline correction officers involved in misconduct; and

  f.  Condoning and encouraging correction officers in the belief that they can violate the rights of persons such as the plaintiff in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

  g.  Failing to train correction officers in the accurate and honest reporting of events including failing to investigate the honesty and accuracy of reports submitted to commanding officers and relying upon patently false and or tailored documents submitted by correctional officers to punish inmates such as plaintiff who have not committed an infraction.

  h.  Failing to maintain the premises despite knowledge that the deteriorating physical condition of the premises posed an ongoing hazard to the safety of the persons thereat; the failure to maintain the premises enables the inmates to create and to hide contraband including weapons within the facility and to fashion homemade weapons from the eroding physical plant; years of disrepair and neglect of repairs have been long been known by the defendant CITY OF NEW YORK but it has been the policy of the CITY OF NEW YORK to deliberately disregard the dangers posed to the health and safety of the persons –both inmates and staff who live and work on Rikers Island and more particularly Anna M. Kross Center, and as the following

demonstrates, the CITY OF NEW YORK has been aware of the conditions for a very long time:

• Mayor acknowledges that the conditions at Rikers Island has been "decades in the making" and blames "chronic mismanagement."  Mark Cranston, Rikers Big Problem: It's Falling Apart, N.Y. Daily News, March 16, 2015 at http://www.nydailynews.com/opinion/mark-cranston-rikers-big-problem-falling - article-1.2148770

• The President of the Correction Officers Benevolent Association described the conditions at the jails on Rikers Island as "horrible, deplorable conditions everywhere...they brought in contractors who've done nothing to fix the problems." Quoted in Brad Hamilton, Cell Damage: Rikers in Ruins after Years of Neglect, N.Y Post, January 13, 2013 at http://nypost.com/2013/01/13/cell-damage-rikers-in-ruins-after-years-of-neglect/

• The majority of weapons found on the island are fashioned out of building materials at hand and not smuggled in. Makeshift wooden or metal shanks can be made from fragments of deteriorating windows, floors and radiators. See, Report of the New York City Board of Correction, an independent City Charter Agency found at http://www.nyc.gov/html/boc/downloads/pdf/reports/Slashings_stabbings_CRP_2015 _04_27_FINAL.pdf; See also, http://grist.org/justice/a-sinking-jail-the-environental-disaster-that-is-rikers-island/

• The NYC Comptroller issued a report in November 2015 which acknowledged that Rikers Island infrastructure is poor.

• Reports by both the New York City Department of Correction and The New York City Board of Correction demonstrate the appallingly poor performance and failure of the CITY to recover makeshift weapons; "over three-quarters of all slashing and stabbing incidents in 2014 occurred inside housing units, which are relatively contained settings. Despite this fact, the Department has had little success recovering the weapons that were used in these assaults" See, NYC Board of Correction Report, Violence in New York City Jails: Slashing and Stabbing Incidents at p. 5, accessed at http://www.nyc.gov/html/boc/downloads/pdf/reports/Slashings_stabbings_CRP_2015_04_27_FINAL.pdf;

• The New York City Department of Correction is required to conduct searches (see, N.Y.C. DEP'T OF CORRECTION, DIRECTIVE 4508R-E, CONTROL OF AND SEARCH FOR CONTRABAND, part VII, sec. F, at 29 (May 15, 2009) (DOC staff perform emergency searches "when there are reasonable grounds to believe that dangerous contraband is contained in any area of the facility or its immediate surroundings") –the data compiled by the CITY establishes that the utter failure of the law enforcement function of the New York City Department of Correction in failing to locate and find weapons in the facilities.  In 2014, DOC failed to recover the weapons that were used in at least 80.0% of slashing and stabbing incidents.

In all, DOC reported that it had recovered only 12 weapons in slashing and stabbing incidents in 2014. Of note, the weapons that were recovered were mostly inmate manufactured from materials commonly found in the jail environment, e.g. metal, plexiglass, and wood. Ten were improvised or inmate-made, and two were scalpel blades. Of the 14 weapons that were reportedly recovered following the 2013

incidents, seven were scalpel blades or hobby knives, while the rest were improvised

or inmate-made (See N.Y.C. DEP'T OF CORRECTION, Monthly Security Statistical

Reports – Fiscal Years 2013-14) See, NYC Board of Correction Report, Violence in

New York City Jails: Slashing and Stabbing Incidents at p. 6.

45.     Plaintiff is informed and believes, and on the basis of such information

and belief alleges, that defendant authorized, acquiesced in, tolerated, or permitted

other inmates herein to engage in the acts of violence against plaintiff and correction

officer and supervisory staff to ignore the plaintiff's requests for transfer to a different

housing unit or to protective custody.

46.     Defendants' conduct as alleged herein constitutes a pattern of

constitutional violations based either on a deliberate plan by defendants or on

defendants' deliberate indifference, gross negligence, or reckless disregard to the

safety, security, and constitutional and statutory rights of Plaintiff; the said conduct of

the defendant CITY OF NEW YORK is one of which the defendant is aware due to

the long history of litigation and consent decrees involving the failures of the

Department of Correction to abide by its constitutional obligations including proper

building maintenance and protection of inmates from both inmate on inmate violence

and correction officer violence; failures which include inadequate hiring and training

of officers; failures to enforce employee discipline for violation of rules; failure to

properly conduct or train employees in searching for evidence of crimes such as

hidden contraband and crime scene investigative techniques and the failure to utilize

available screening devices to detect hidden weapons.

**B. The Incident**

47.     On or about October 7, 2014, at while in the corridor of the Quad Upper 12 tier of Anna M Kross Center ("AMKC") plaintiff was attacked by inmates including inmates Gerald Williams; Daquan Parker; and, Randy Gillespie.

48.     Correction Officer Reed, Shield #1373 was on duty at AMKC on October 7, 2014.

49.     Correction Officer Reed Shield #1373 failed to timely intervene so as to prevent the assault upon the plaintiff.

50.     The inmates with whom plaintiff were housed were known by the Department of Corrections to be gang members.

51.     The inmates with whom plaintiff was housed were known to have violent dispositions.

52.     Before being assaulted the plaintiff had requested that he not be housed in the unit where the assault occurred because of the presence of gang members in the housing unit where the assault occurred and yet his request was unreasonably denied.

53.     The facility where the plaintiff was housed did not have sufficient numbers of Correctional Officers to monitor the inmates in the housing area where the assault occurred and furthermore the Correction Officers who were on duty did not properly and adequately monitor the housing area so as to prevent the assault upon plaintiff.

54.     Correction Officer Reed Shield #1373 was not at her post paying attention to the number of inmates congregating together on the tier within the housing unit when the plaintiff was surrounded, punched, slashed and repeatedly kicked and assaulted.

55.     Prior to the assault of October 7, 2014, Plaintiff had informed the Department of Correction that he did not want to be housed with Blood gang members due to fear and that he had previous conflict which justified his fear.

56.     Correction Officer Reed Shield #1373 and other Correction Officers were not close enough to the plaintiff to timely protect him from being assaulted.

57.     Had the Correction Officers been at their posts the assault could have been prevented or could have been stopped in sufficient time so as to have avoided injury to the plaintiff KERON MOREIRA.

58.     On October 10, 2014, following the assault upon plaintiff, an infraction was served upon plaintiff which falsely charged the plaintiff with offenses in violation of rule "101.12" "assault with injury" and a violation of rule 120.10 "Refusal to Obey a Direct Order."

59.     The Department of Correction does not properly train Correction Officers in documentation or investigation of infractions and the proper issuance of same and by serving the plaintiff who was victim of the assault with an infraction further caused the plaintiff distress and harm.

60.     In failing to observe or protect plaintiff, or otherwise standing by and allowing a brutal beating on plaintiff by other inmates to continue for an unreasonable period of time, resulting in unnecessary and severe injury to the plaintiff and by the aforesaid acts and omissions, while carried out under color of law, with no justification or excuse in law the defendants engaged in a gross abuse of governmental authority and power which shocks the conscience and is fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental

officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order.  The above acts and omissions were consciously chosen from among various alternatives.

61.        As a direct and proximate result of the deliberately indifferent and wrongful conduct of defendant herein, plaintiff has suffered and continues to suffer injury, damage and loss including, but not limited to:

   (a) Severe emotional distress;

   (b) Pain and suffering.

### SECOND CAUSE OF ACTION UNDER 42 USC SECTION 1983
INDIVIDUAL DEFENDANTS
BLAKE, REED, JOHN DOEs, CRIPPS and WARDEN

62.    Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 61 above as though fully set forth herein.

63.    The individual defendants, while acting under color of law, deprived Plaintiff of his civil rights under the Eighth and Fourteenth Amendments to the United States Constitution when they subjected him to cruel and unusual punishment and acted with deliberate indifference and reckless disregard toward Plaintiff's right to be free from cruel and inhuman conditions of confinement and afforded due process of law and by, among other things, the following acts:

   a.      Placing Plaintiff, in a housing unit with inmates who defendants knew had exhibited aggressive and combative behavior without watching, monitoring or protecting Plaintiff;

   b.      Placing Plaintiff in a housing unit with combative inmates under circumstances which were conducive to the eruption of violence;

c.      Causing Plaintiff to remain in the housing area with the combative inmates when defendants knew, or should have known, that an altercation had erupted, further violence was imminent, and Plaintiff appeared to be injured.

d.      Not observing or protecting plaintiff, or otherwise standing by and allowing a brutal beating on plaintiff by other inmates to continue for an unreasonable period of time, resulting in unnecessary and severe injury to Plaintiff.

64.      The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order.  The above acts and omissions were consciously chosen from among various alternatives.

### THIRD CAUSE OF ACTION
### DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. § 1983
(Entity Liability)

65.      Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 64 above as though fully set forth herein.

66.      Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, defendant CITY OF NEW YORK with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of plaintiffs, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the following policies, practices and customs:

(a)    Failing to adequately train, supervise, and control custodians of jail inmates in the proper recognition of dangerous inmates and violent situations.

(b)    Failing to adequately train, supervise, and instruct custodians of jail inmates in properly monitoring, deterring, controlling and responding to inmate altercations and violence.

(c)    Failing to establish policies and procedures that enable identification and separation of dangerous or violent inmates from other inmates, detainees or arrestees.

(d)    Failing to adequately train, supervise and control custodians of jail inmates in the proper response to threats of violence.

(e)    Failing to maintain video surveillance of inmate areas to insure safety of inmates, those that are unable to care for themselves and present a danger to themselves or others.

(f)    Failing to establish policies and procedures to reduce the risk of inmate injury by providing for immediate response to inmate violence or threats of violence.

(g)    Failing to utilize adequate and available devices to locate and remove items capable of being utilized as weapons.

(h)    Failing to maintain the premises so as to keep materials which are fashioned into weapons from inmates.

67.    As a direct and proximate result of the foregoing, plaintiff sustained injury and damages as proved and as more specifically stated above.

## FOURTH CAUSE OF ACTION
## FAILURE TO INTERVENE TO PROTECT PRISONER IN CUSTODY
### (42 U.S.C. § 1983)
### INDIVIDUAL DEFENDANTS
### REED, BLAKE, JOHN DOEs

68.    Plaintiff re-alleges and incorporates all of the allegations and statements set forth hereinabove.

69.    At all times relevant here, the individual defendants were present and were charged with the constitutional duties of protection of plaintiff and were charged with the duty to not knowingly, with wanton disregard, cause his life, health and safety to be placed in danger by intentionally and/or deliberately ignoring the known dangers to plaintiff that their actions and/or omissions placed him in.

70.    Defendant REED, Shield #1373 had ample and reasonably sufficient time and opportunity to so intervene and prevent plaintiff's injuries, and was compelled to do so as a Corrections Officer under the laws of the State of New York and under the Constitution of the United States of America.  In deliberate indifference to the life and welfare of plaintiff, Defendant REED, Shield #1373 intentionally and with deliberate indifference to the civil rights of plaintiff, refrained from intervening in the acts leading to Plaintiff's injuries.

71.    Defendant BLAKE, Shield #1373 had ample and reasonably sufficient time and opportunity to so intervene and prevent plaintiff's injuries, and was compelled to do so as a Captain under the laws of the State of New York and under the Constitution of the United States of America.  In deliberate indifference to the life and welfare of plaintiff, Defendant BLAKE, intentionally and with deliberate indifference to the civil rights of plaintiff, refrained from intervening in the acts leading to Plaintiff's injuries.

72.     Defendants JOHN DOEs, had ample and reasonably sufficient time and opportunity to so intervene and prevent plaintiff's injuries, and was compelled to do so as Correction Officers under the laws of the State of New York and under the Constitution of the United States of America.  In deliberate indifference to the life and welfare of plaintiff, Defendant JOHN DOEs, intentionally and with deliberate indifference to the civil rights of plaintiff, refrained from intervening in the acts leading to Plaintiff's injuries.

73.     As a result thereof, Plaintiff's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution were violated.  As a further result thereof plaintiff sustained the injuries and damages alleged herein.

74.     The conduct of the individual defendant REED, Shield #1373 was intentional, malicious, willful, wanton and in reckless disregard of Plaintiff's constitutional rights and/or grossly negligent in that this conduct shocks the conscience and is fundamentally offensive to a civilized society, so as to justify the imposition of punitive damages on the individual Defendant.

75.     The conduct of the individual defendant BLAKE was intentional, malicious, willful, wanton and in reckless disregard of Plaintiff's constitutional rights and/or grossly negligent in that this conduct shocks the conscience and is fundamentally offensive to a civilized society, so as to justify the imposition of punitive damages on the individual Defendant.

76.     The conduct of the individual defendant JOHN DOEs was intentional, malicious, willful, wanton and in reckless disregard of Plaintiff's constitutional rights and/or grossly negligent in that this conduct shocks the conscience and is fundamentally offensive to a

civilized society, so as to justify the imposition of punitive damages on the individual

Defendants.

## FIFTH CAUSE OF ACTION
### FAILURE TO TRAIN AND SUPERVISE (42 U.S.C. § 1983)

By Plaintiff against Defendants CITY OF NEW YORK and
ROBERT CRIPPS the Warden at Anna M Kross Center and WARDEN Anna M Kross
Center in their Individual and Official Capacity

77.     Plaintiffs re-alleges and incorporate all of the allegations and statements set forth

hereinabove

78.     At all times mentioned herein and prior thereto, defendants City of New York and

ROBERT CRIPPS the Warden at Anna M Kross Center and WARDEN Anna M Kross

Center had a duty to train, instruct, supervise and discipline their subordinates to assure

they respected and did not violate constitutional and statutory rights of inmates, and to

objectively investigate violations of said prisoners' rights, including, but not limited to,

the right to be free of infliction and cruel and unusual punishment and the right to be safe

and protected from injury while in defendants' custody, under the Eighth and Fourteenth

Amendments to the U.S. Constitution.

79.     Plaintiff upon information and belief alleges, that prior to the incident alleged

herein, defendant ROBERT CRIPPS the Warden at Anna M Kross Center facilitated,

permitted, ratified and condoned similar acts of inmate on inmate assaults, and were

deliberately indifferent to the health and safety of inmates in general and plaintiff in

particular.  Said defendant knew, or should have reasonably known, of these practices,

patterns or policies of constitutional violations, and additionally, of the existence of facts

and situations which created the potential of unconstitutional acts, and had a duty to

instruct, train, supervise and discipline their subordinates to prevent similar acts to other persons, but failed to do so.

80.     Plaintiff upon information and belief alleges, that prior to the incident alleged herein, defendant the Warden at Anna M Kross Center facilitated, permitted, ratified and condoned similar acts of inmate on inmate assaults, and were deliberately indifferent to the health and safety of inmates in general and plaintiff in particular.  Said defendant knew, or should have reasonably known, of these practices, patterns or policies of constitutional violations, and additionally, of the existence of facts and situations which created the potential of unconstitutional acts, and had a duty to instruct, train, supervise and discipline their subordinates to prevent similar acts to other persons, but failed to do so.

81.     As a result thereof, plaintiff' rights under the Eighth and Fourteenth Amendments to the U.S. Constitution were violated.  As a further result thereof, plaintiff sustained the injuries and damages alleged herein.

82.     The conduct of the individual defendants mentioned herein, in their individual capacities, was intentional, malicious, willful, wanton and in reckless disregard of Plaintiff' constitutional rights and/or grossly negligent in that this conduct shocks the conscience and is fundamentally offensive to a civilized society, so as to justify the imposition of punitive damages on these Defendants in their individual capacity.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests that judgment be entered as follows:

As to the second through the fifth causes of action: compensatory damages; an award to plaintiff of the costs and disbursements herein and an award of attorney fees as provided under 42 U.S.C. Section 1988 for each cause of action for violations of plaintiff's rights as protected and pleaded under 42 U.S.C. Section 1983; punitive damages as to the individual defendants in the cause of action; as to the first cause of action plaintiff seeks compensatory damages, costs and disbursements on this cause of action.

And for such other and further relief as this Court may deem just and proper and equitable.

Dated: New York, New York
       June 6, 2016

Respectfully Submitted,
THE LAW OFFICES OF
PAUL THOMAS LAYTON, P.C.
PAUL THOMAS LAYTON, ESQ

By: _____
PAUL THOMAS LAYTON, ESQ. (PTL 9242)
30 Vesey Street (Suite 1801)
New York, New York 10007-2975
Office: 646-402-4811
Fax: 646-640-2723
layton.law.pc@hushmail.com

22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                    Docket 1:16-cv-04203(LAK)(HBP)
-------------------------------------------------------------------X
 KERON MOREIRA,
                                        Plaintiffs


        -against-


THE CITY OF NEW YORK; CAPTAIN BLAKE
Individually and in his Official Capacity; CORRECTION
OFFICER REED #Shield 1373 Individually and in her
Official Capacity; CORRECTION OFFICER JOHN
DOE Individually and in his Official Capacity; Warden of
Anna M. Kross Center, ROBERT CRIPPS, Individually
and in his Official Capacity; and, Warden of
Anna M. Kross Center Individually and in his Official
Capacity,
                                        Defendants

-------------------------------------------------------------------X

                            **COMPLAINT**
                     **JURY TRIAL DEMANDED**


PAUL THOMAS LAYTON, ESQ. (PTL 9242)
Attorney for Plaintiffs
Office & PO Address
30 Vesey Street –Suite 1801
New York, New York 10007-2975
e-mail: paul.layton@gmail.com
        layton.law.pc@hushmail.com
Tel. 646-402-4811
Fax. 646-640-2723